1
2
3
4
5
6
7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JACQUELINE CONNELL,                    No. CIV S-08-0062-GEB-CMK

12                    Plaintiff,

13          vs.                            <u>ORDER</u>

14  UNITED STATES OF AMERICA, et al.,

15                    Defendants.

16  _____/

17          Pending before the court is defendants' motion to compel plaintiff's attendance at

18  an independent mental examination (IME) on November 3, 2008.  A hearing on this motion was

19  held on October 31, 2008 before the undersigned.  Plaintiff's attorney Stewart Altemus appeared

20  in person as did Assistant United States Attorney Lynn Trinka Ernce for the defense.

21          **I.  BACKGROUND**

22          This counseled civil case was removed to this court from Shasta County Superior

23  Court on January 10, 2008.  Plaintiff brought this action alleging negligent and intentional

24  infliction of emotional distress, assault and battery, and sexual battery.  The claims arise from

25  interactions between plaintiff and her physician, Dr. Livolsi, during and around a surgery Dr.

26  Livolsi performed.  Plaintiff alleges Dr. Livolsi "sexually violated" her during and/or following a

1

surgery but apparently while she was still under the effects of anaesthesia.  She also alleges Dr. Livolsi harassed her and/or engaged in inappropriate sexual behavior, both before and after the alleged sexual violation.

On June 27, 2008, the United States of America filed a Notice of Certification of Scope of Federal Employment.  Plaintiff filed an amended complaint on September 18, 2008, substituting the United States as the defendant in the place of Dr. Livolsi.

On September 5, 2009 the parties filed a stipulation and order for an independent mental examination, which the court signed on September 24, 2008.  The stipulation simply stated:

> It is stipulated that, pursuant to Rule 35 of the Federal Rules of Civil Procedure, plaintiff will submit to a mental examination by Robert F. Asarnow, Ph.D. on November 3, 2008 at a place and time that is agreed to by the parties.

See Doc. 34.

## II.  MOTION TO COMPEL

On October 10, 2008, the defense filed the instant motion indicating the parities were unable to agree to a time and place for the IME (Doc. 37).  In addition, the parties are in dispute as to whether the examination can be recorded, what tests are to be performed, and whether the tests to be performed are to be identified prior to the examination.  On October 28, 2008, the parties filed a joint statement including arguments in support and in opposition of the motion (Doc. 38).  On October 29, 2008, plaintiff filed an additional declaration in support of her position (Doc. 39).

The four issues before the court in the motion to compel are:

1.  Is plaintiff required to submit to a mental examination?
2.  Should the scope of the exam be limited and/or the tests to be performed disclosed in advance?
3.  Can the examination be recorded?
4.  What is the proper location for the examination?

/ / /

/ / /

2

1    Rule 35 of the Federal Rules of Civil Procedure allows the court to order "a party

2    whose mental . . . condition . . . is in controversy to submit to a . . . mental examination by a

3    suitably licensed or certified examiner." Rule 35(a)(1).  Whether or not to allow a physical or

4    mental examination under Rule 35 is within the discretion of the court.  See Stuart v. Burford, 42

5    F.R.D. 591, 592 (N.D. Okla. 1967).  Rule 35(a) is to be construed liberally in favor of granting

6    discovery.  See Postell v. Amana Refrigeration, Inc., 87 F.R.D. 706, 707 (N.D. Ga. 1983).

7                           **A.  Propriety of the Examination**

8    Rule 35 requires the plaintiff's mental condition to be "in controversy" before a

9    mental examination will be ordered.  This requires more than an allegation of emotional distress.

10    See Turner v. Imperial Stores, 161 F.R.D. 89, 97-98 (S.D. Cal. 1995).  Simply asserting a claim

11    of damages for physical and emotional distress may not be sufficient to warrant the allowance of

12    a mental examination.  See Cody v. Marriott Corp., 103 F.R.D. 421, 422 (D.C. Mass. 1984).

13    Plaintiff argues that she has not, in fact, put her mental condition "in controversy"

14    because she has not alleged ongoing or continuing emotional or mental harm resulting from the

15    actions of the defendants.  In addition, she claims she is not going to offer expert testimony from

16    any mental health care professional at trial.

17    However, plaintiff does more than simply allege emotional distress.  In her

18    amended complaint she alleges she has suffered from "extreme and severe emotional distress and

19    damages" as well as "severe emotional distress, physical injury, and *mental injury*" as a result of

20    the defendants' conduct. (Doc. 27 at 5, 6 (emphasis added)).  The claims she sets forth in her

21    amended complaint include two separate tort claims for intentional and negligent infliction of

22    emotional distress.  By claiming a mental injury as well as asserting tort claims of intentional and

23    negligent infliction of emotional distress, plaintiff has put her mental condition "in controversy."

24    See Turner, 161 F.R.D. at 91-92.

25    Plaintiff cites Curtis v. Express, Inc., 868 F. Supp. 467 (N.D.N.Y. 1994), in

26    support of her position that the court should not allow a mental examination simply because she

3

1    claims damages for emotional distress.  However, the court in <u>Curtis</u> states, "[i]t is clear that

2    there is no separate tort claim for emotional distress in this case." <u>Id.</u> at  469.  That is not the

3    case here.  Plaintiff is not just alleging damages for emotional distress, she has made two

4    separate tort claims for emotional distress, and has alleged an actual mental injury.   In addition,

5    the court in <u>Curtis</u> found there "are scenarios in which the pleadings themselves form a sufficient

6    basis to meet the requirements of Rule 35, such as in negligence actions where plaintiffs allege

7    mental or physical injuries." <u>Id.</u> (citing <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 118 (1964)).

8    Here, plaintiff has made such allegations.

9           The other case plaintiff cites in support of her position is <u>Cody v. Marriott Corp</u>,

10   103 F.R.D. 421 (D.C. Mass. 1984).  However, as with <u>Curtis</u>, plaintiff's reliance is misplaced.

11   The court in <u>Cody</u> stated that "it is clear that where . . . a plaintiff refers to specific mental and

12   psychiatric injuries, the plaintiff is affirmatively placing in controversy a mental condition."

13   <u>Cody</u>, 130 F.R.D. at 423.  As discussed above, plaintiff's complaint specifically refers to a

14   mental injury.

15          Plaintiff's complaint puts her mental condition in controversy by claiming the

16   torts of intentional and negligent infliction of emotional distress, as well as alleging mental

17   injury.  Regardless of whether or not the parties stipulated to a mental evaluation, the defendants

18   are entitled to have plaintiff evaluated.  The "good cause" requirement of Rule 35 is also met by

19   plaintiff's claims of mental injury, "which provides the defendant with good cause  for an

20   examination to determine the existence and extent of such asserted injury." <u>Schlagenhauf v.</u>

21   <u>Holder</u>, 379 U.S. 104, 119 (1964)

22          **B.  Scope of the Examination**

23          Rule 35(a)(2) requires the moving party to "specify the time, place, manner,

24   conditions and scope of the examination, as well as the person or persons who will perform it."

25   Defendants' motion to compel specifies the examination, pursuant to the parties' stipulation, is

26   set for November 3, 2008, to be conducted by Dr. Asarnow.  The motion also specifies that they

4

1   would like the examination to take place at Dr. Asarnow's offices in Los Angeles, California.

2           As to the conditions and scope of the examination, defendants have provided a

3   declaration from Dr. Asarnow which sets forth the purpose of his examination "will be to

4   evaluate plaintiff's mental health and to determine and assess the severity of plaintiff's

5   psychological problems, if any."  (Doc. 38-2 at 2).  It is clear from this declaration that Dr.

6   Asarnow expects the evaluation to take a full day.  Dr. Asarnow also explains that his

7   examination will consists of two parts: an interview concerning plaintiff's history and cognitive

8   and personality tests, which will provide "quantitative, objective measures of depression and

9   anxiety."  (Doc. 38-2 at 2).  He also states that the tests he plans "to administer are all widely-

10  used, reliable and well-validated tests that are commonly used by mental health professionals."

11  (Doc. 38-2 at 2).

12          Dr. Asarnow further explains that two types of tests he generally administers

13  during his mental examinations include the MMPI-II and the MCMI tests.  He states the inability

14  to include these tests would "limit the scope of [his] examination to information obtained during

15  the interview . . . [and] this would produce a far more subjective result that if plaintiff were to

16  submit to widely-accepted, standardized psychological tests."  (Doc. 38-2 at 2-3).

17          Plaintiff objects to defendants' refusal to inform her of which specific tests Dr.

18  Asarnow  will administer during the mental examination.  She specifically refuses to submit to

19  any personality or IQ tests, including the MMPI-2 or the MCMI tests.  She claims the MMPI-2 is

20  designed to elicit information about her "sexuality, religious belief, criminality, morality,

21  physical and mental state, and previous behaviors that have absolutely nothing to do with [her]

22  current claims."  (Doc. 38 at 19).  She is requesting the court to order the defendants to identify

23  the specific tests she will be subjected to and that she then be allowed an opportunity to address

24  the inapplicability of each individual test.

25          Plaintiff cites Usher v. Lakewood Eng'g & Mfg. Co., 158 F.R.D. 411 (N.D. Ill.

26  1994) for support.  In Usher, which is an employment discrimination case, the plaintiff brought a

1  motion for a protective order, outlining why certain tests should not be performed in that case.

2  The court agreed, and issued a protective order.  Here, plaintiff is not in the same position.  This

3  case she has stated an objection to certain tests, specifically personality and IQ testing such as the

4  MMPI.  However, her objections to the MMPI are not persuasive.  The MMPI is a well

5  established psychological test, which provides the examiner with a starting point for evaluating

6  plaintiff.  See e.g., Hirschheimer v. Assoc. Metals & Minerals Corp., 1995 WL 736901, *4

7  (S.D.N.Y. 1995)  (citing Burger v. Litton Indus., Inc., 1995 WL 363741, *2 (S.D.N.Y. 1995)).

8       Dr. Asarnow's declaration, which the court finds credible and persuasive,

9  specifies the types of tests which will be conducted and the necessity for the types of

10  examinations plaintiff objects to.  In addition, the court is persuaded by Dr. Asarnow's statement

11  that advanced disclosure of the specific tests he will be performing may affect the validity of the

12  tests.  The court does not find it necessary in this case to limit the tests Dr. Asarnow will be

13  allowed to perform.  As the court in Lahr v. Fullbright & Jaworski, LLP, 164 F.R.D. 196, 202

14  (N.D. Tex. 1995), found, "[f]or the court to intervene and limit the type of examination an expert

15  has indicated is necessary in order to analyze plaintiff's claims would subvert the truth finding

16  function inherit in Rule 35 examinations."

17       Plaintiff also claims her right to privacy will be violated by subjecting her to the

18  full range of psychological tests, such as the MMPI-2.  She cites Schlagenhauf for the position

19  that she does not give up her right to privacy by making a claim for damages.  However,

20  plaintiff's privacy concerns can be addressed in a protective order limiting disclosure of the

21  results of the examination to the attorneys and experts.  See Lahr, 164 F.R.D. at 202.  If plaintiff

22  feels there is a need for such a protective order, she may bring such a motion.

23       Defendant has sufficiently specified the time, place, manner, conditions and scope

24  of the examination.  No further detail is required.  The scope of the examination should not be

25  limited, and will be ordered as requested by the defendants and as Dr. Asarnow finds appropriate.

26  In addition no advanced disclosure of the exact tests Dr. Asarnow will perform is necessary.

### C.  Recording of the Examination

1

2          The parties have agreed, with the consent of Dr. Asarnow, that the interview

3  portion of the examination may be recorded.  At issue before the court is only the recoding of the

4  "testing" portion of the examination.

5          Plaintiff is requesting the entire examination be recorded.  She claims that not

6  allowing such a recording will subject her to a "second wide-ranging 'deposition' by the

7  examining psychiatrist, only this time the deposition will not be recorded by anybody but the

8  psychiatrist.  Plaintiff will therefore have to pit her memory of what she said to the psychiatrist

9  against a highly trained doctor.  This is not a fair fight."  (Doc. 38 at 16).

10         Plaintiff acknowledges the courts have come down on both sides of this issue, and

11  cites to several cases in which an attorney or other third party was allowed to attend a

12  psychological examination.  See e.g., Zabkowicz v. West Bend Co., 585 F. Supp. 635 (E.D. Wis.

13  1984), Vreeland v. Ethan Allen, Inc., 151 F.R.D. 551 (S.D.N.Y. 1993).  The court finds these

14  cases unpersuasive.  For example, the court in Zabkowicz, which allowed the plaintiffs to either

15  record or have a third party attend the examination, cited no authority at all for allowing the

16  plaintiffs to have a third party present.  In Vreeland, the court concluded the magistrate judge did

17  not abuse his discretion by allowing plaintiff's attorney to be present at the examination.

18         Instead, the court finds other opinions persuasive wherein the court has not

19  allowed the examination to be recorded or third parties to attend absent some special

20  circumstance.  See e.g., Favale v. Roman Catholic Diocese, 235 F.R.D. 553, 556-57 (D. Conn.

21  2006).  Plaintiff has not provided the court with any specific reasons to find the potential for

22  abuse, other than very general and conclusory concerns.  The court does not find her arguments

23  persuasive.  Dr. Asarnow specifically stated his intention to utilize widely-used, reliable and

24  well-validated tests.  In addition, the parties have agree that the interview portion of the

25  examination may be recorded.  Therefore, plaintiff's concerns about being subjected to a second

26  deposition will be addressed by that recording.  During the testing phase of the examination,

7

1   there will be less opportunity for the  "deposition" type of questioning plaintiff is concerned

2   about.  Plaintiff has not met her burden to show good cause for such protection.  See Rule 26(c).

3   **D.  Location of the Examination**

4         In the motion, the defense requests the examination be performed at Dr.

5   Asarnow's office in Los Angeles.  Plaintiff objects to that location and suggests there is no

6   reason the examination cannot occur in Redding, where plaintiff resides.

7         Plaintiff apparently agreed to travel to Los Angeles for the examination on the

8   condition that defendant prepay all expenses because she is not in the financial position to front

9   any out of pocket expense.  She prefers to have the examination occur in Redding, and claims

10  that the defense has not indicated any legitimate reason why the doctor cannot travel to Redding.

11  She claims there are at least six flights, including one non-stop, every day between Los Angeles

12  and Redding.

13        Defendants are requesting the examination be held in Los Angeles as that is the

14  most cost-effective location.  Defendants have expressed a willingness to pay all of plaintiff's

15  expenses in traveling and staying in Los Angeles for the IME.  In fact, the defense has arranged,

16  reserved and paid for a flight to Los Angeles on Sunday, November 2, 2008, a return flight to

17  Redding on Monday, November 3, 2008, and a one-night hotel for Sunday night.  Defendants

18  have also indicated the ability to pay plaintiff a per diem amount of $32 per day (assuming two

19  days) in advance.  However, they claim they are unable to front her any other incidental expense

20  without knowing specifically what those expenses are.  In addition, they claim the examining

21  doctor is willing to front the money for plaintiff's necessary taxi fare.

22        The defense objects to having the examination take place in Redding because of

23  the expense involved (citing a cost of about $1000 to have plaintiff travel to Los Angeles and

24  over $4000 to have the doctor travel to Redding).  In addition, the defense has already made all

25  of the arrangements for the examination and plaintiff's travel to and stay in Los Angeles, and that

26  is the location noticed in the motion.

1       The stipulation the parties entered into left open the question as to where the

2  examination was to take place.  At one point the examination was set to occur in Sacramento.

3  However, the motion the defense has filed, sets the location of the examination in Los Angeles.

4  With some limitations, the defendants have the ability to notice where the examination is to take

5  place.  If a plaintiff lives in a city other than the one in which the trial will occur, like here, she

6  can be required to submit to a medical examination in the city in which the trial will occur.  See

7  Landry v. Green Bay & Western R. Co., 121 F.R.D. 400, 401 (E.D. Wis. 1988).  In addition, if

8  plaintiff did not reside within the district in which she brought her case, she would likely be

9  required to pay her own travel expenses as a cost of bringing suit (subject to some limitations

10  upon a showing of good cause).  See e.g., Levick v. Steiner Transocean Ltd., 228 F.R.D. 671,

11  672 (S.D. Fla. 2005).

12       Here, the defense has noticed the examination to occur in Los Angeles.  They

13  have made all of the arraignments and have pre-paid most, if not all, of plaintiff's expenses.

14  Under the scenario outline by the defense, plaintiff will not be required to pay for any expense

15  involved in traveling to or staying one night in Los Angeles.  Having the examination take place

16  in Los Angeles is the most cost effective location, and plaintiff will be only minimally

17  inconvenienced by having to spend one night in Los Angeles.  Plaintiff has provided the court

18  with no good cause for why the examination should not occur in Los Angeles.

19       **III.  CONCLUSION**

20       The court is sympathetic to Plaintiff's concern regarding the scope and

21  intrusiveness of the requested I.M.E.  At various times during oral argument,  Plaintiff's counsel

22  stressed that the Plaintiff's present mental condition was not now an issue in this case.  Skeptical,

23  however, that such oral self-serving statements would supercede the pleadings at time of trial, the

24  court directed Defendant's counsel to meet with Plaintiff's counsel following the hearing to

25  discuss eliminating or narrowing the emotional distress claims at time of trial which would have

26  had the effect of narrowing or eliminating the need or scope of the requested I.M.E.  The court

indicated its availability to enter an order upon such a stipulation at any time during the day if the parties were successful.  Plaintiff's counsel, however,  chose not to avail himself in this option, and the court is simply left with the pleading set forth in the amended complaint which continue to raise issues of "extreme and severe emotional distress."  Accordingly, and upon consideration of the motion, including the arguments in favor and in opposition thereto, discussion with the parties, and good cause appearing therefor, IT IS HEREBY ORDERED that:

      1.     Plaintiff is ordered to submit to an independent mental examination on November 3, 2008, at 9:00 a.m. at Dr. Asarnow's office in Los Angeles, California;

      2.     Defendants are required to pre-pay all of plaintiff's expenses including her round trip air fare, one night hotel, and $32 per diem per day for two days;

      3.     Dr. Asarnow is ordered to pay plaintiff's taxi fare, as he has offered to do;

      4.     The scope of the examination will be as requested by the defendants and as Dr. Asarnow finds appropriate;

      5.     Dr. Asarnow is not required to disclose in advance what psychological tests will be conducted during the examination beyond what he identified in his declaration;

      6.     Only the interview portion of the examination will be recorded, pursuant to the parties agreement;

      7.     The testing portion of the examination will not be recorded; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8.     Plaintiff is ordered to travel to Los Angeles on the flights arranged by the defendants, specifically leaving on Sunday, November 2, 2008, on Alaska Airlines flight number 2310 which leaves Redding, California at 3:55 p.m. and arrives Los Angeles at 7:10 p.m. (with one stop in Arcata).  The reserved return non-stop flight, on Alaska Airlines flight number 2304, leaves Los Angeles on Monday, November 3, 2008, at 7:25 p.m., and arrives in Redding at 9:15 p.m.  The confirmation number for both of these flights is GIAUDP.


DATED:  October 31, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE